IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL J. WHALLEY, SR.,** | : | Civil No. 4:18-CV-1295 |
| Plaintiff, | : | |
| v. | : | (Magistrate Judge Carlson) |
| **C.O. BLAZICK, et al.,** | : | |
| Defendants. | : | |

**MEMORANDUM OPINION AND ORDER**

I.  **Statement and Facts of the Case**

The plaintiff, Michael Whalley, was a state inmate in the Pennsylvania Department of Corrections ("DOC"). Whalley filed this action on June 26, 2018, alleging that the defendants—correctional staff at the State Correctional Institution at Waymart—used excessive force against him in violation of his constitutional rights when he was incarcerated at SCI Waymart in 2016.

Now, in anticipation of trial, the parties have each filed motions *in limine*, seeking to exclude testimony from both an expert witness and from the plaintiff. On this score, the plaintiff's motion seeks to prohibit the defendants' expert, Dr. William Cox, from testifying that the alleged excessive force incident did not occur the way that Mr. Whalley recounts it. (Doc. 53). This motion additionally seeks to bar the

defendants from challenging a 2016 medical notation in Whalley's records that Whalley suffered from mild neurocognitive disorder due to a traumatic brain injury ("TBI"). (Id.). For their part, the defendants have filed a motion *in limine* seeking to prohibit the plaintiff from testifying that the TBI diagnosis was a result of the August 2016 use of force incident that is at issue in this case. (Doc. 56).

We held an evidentiary hearing on December 15, 2020, and the parties have submitted post-hearing briefs in support of their respective positions. Thus, the motions are fully briefed and are ripe for resolution. (Docs. 53, 56, 57, 60, 63, 65, 77, 78). For the following reasons, the plaintiff's motion will be granted in part, and denied in part, and the defendants' motion will be denied, in part, and deferred in part.

**II.    Discussion**

    **A.  Expert Testimony – the Legal Standard**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588-89 (1993). That rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if
>
> (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and methods, and

> (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The guidelines set forth in the rule constitute a "trilogy of restrictions on expert testimony: qualification, reliability and fit." Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003). Under the Federal Rules of Evidence, a trial judge acts as a "gatekeeper" to ensure that "any and all expert testimony or evidence is not only relevant, but also reliable." Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir.1997) (citing Daubert, 509 U.S. at 589).

An expert need not have formal qualifications in order to testify as an expert witness; "a broad range of knowledge, skills, and training qualify an expert as such." In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 741 (3d Cir. 1994). However, as the Court of Appeals for the Third Circuit has stated, "the level of expertise may affect the reliability of the expert's opinion." Id. Furthermore, the Rule requires this court to determine "whether there is an adequate 'fit' between an expert's opinions and the facts at issue" in the case. Soldo v. Sandoz Pharmaceuticals Corp., 244 F.Supp.2d 434, 562 (W.D. Pa. 2003).

Notwithstanding the restrictions on the admissibility of expert testimony, the Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. Id.; see also Fed. R. Evid. 401 (defining "relevant evidence," all of which is generally admissible, to mean "evidence having any tendency to make

3

the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). In keeping with this policy, "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008) (quoting Kannankeril, 128 F.3d at 806). Indeed, Rule 704(a) permits opinion testimony on an ultimate issue in the case. Fed. R. Evid. 704(a). However, this Rule is necessarily curtailed when the expert opinion "would merely tell the jury which result to reach." Fed. R. Evid. 704 advisory committee note; see also Quagliarello v. Dewees, 802 F.Supp.2d 620, 623–24 (E.D. Pa. 2011) In this regard, courts have limited expert testimony on an ultimate issue so as not to usurp the fact-finding function of the jury. See e.g., Wood v. Showers, 2019 WL 5847836, at 1-2 (M.D. Pa. Aug. 6, 2019) (limiting expert testimony on the reasonableness of a use of force because it would "invade the province of the jury"); Ward v. Noonan, 147 F.Supp.3d 262, 279 n. 16 (M.D. Pa. 2015) (same); Tschappat v. Groff, 2004 WL 5509087, at *3 (M.D. Pa. June 2, 2004) (prohibiting expert from testifying about an ultimate issue and legal conclusions).

One additional consideration must be borne in mind when considering motions *in limine* which raise concerns that proffered evidence may be unduly prejudicial. We are enjoined to proceed cautiously when making these pre-trial evidentiary determinations. The Third Circuit has thus cautioned that "pretrial Rule

403 exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage"). Moreover, the Third Circuit has characterized Rule 403 as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

Guided by these principles, we turn to a consideration of the parties' motions *in limine*.

### B. Dr. Cox Can Provide Expert Testimony but Will Not be Permitted to Testify about an Ultimate Issue or Legal Conclusions.

As we have explained, Whalley's motion seeks to preclude Dr. Cox's testimony and his expert report. Whalley contends that Dr. Cox's report and his conclusions are not based on any factual or scientific foundation. He also argues that Dr. Cox should be prohibited from testifying regarding his opinion that the alleged incident did not take place in the way Whalley described.

Dr. Cox's report contains his opinions regarding the use of force incident that occurred between Whalley and the defendants in August 2016. (Doc. 80, Def. Ex. 1). The report lists the documents that Dr. Cox considered in forming his opinion,

including incident reports and medical records. In his report, Dr. Cox opines that, contrary to Whalley's account of the incident, Whalley could not have been kicked in the ribs or dropped on his head during the incident. (Id., at 20). Rather, Dr. Cox opined that Whalley was injured in the "takedown" initiated by Sergeant Kranick, which resulted in bruises from the restraints Whalley was placed in and punches to his back. (Id., at 20-22). Dr. Cox concluded that the medical records, including photos taken from the day of the incident, did not support Whalley's version of events. Moreover, Dr. Cox opined that nothing in Whalley's medical record, either before or after the incident, supported a finding that Whalley suffered from a traumatic brain injury. (Id., at 13-17). Specifically, Dr. Cox concludes that "[inmate] Whalley was not subjected to a beating," and that the "incident as represented by Mr. Whalley did not occur." (Id., at 25, 30).

At the outset, we conclude that Dr. Cox is qualified to give his expert opinion. On this score, Dr. Cox has demonstrated specialized knowledge that qualifies him to testify in the areas of forensic pathology, neuropathology, and forensic neuropathology. Dr. Cox is board certified in Anatomic and Clinical Pathology, Forensic Pathology, and Neuropathology by the American Board of Pathology. (Doc. 80, Def. Ex. 2, at 37). He has 47 years of experience in these fields, holding positions such as an associate pathologist, chief medical examiner, professor, and consultant. (Id., at 39-41). Dr. Cox's testimony endeavors to explain how individuals

in his field examine bodily injuries in accordance with medical records and background information about a particular incident in order to understand how a certain injury occurred. In our view, this testimony will assist the trier of fact with respect to the issue of how Mr. Whalley sustained injuries from the use of force incident and the extent of those injuries.

We also find that, subject to the limitations we will impose upon this opinion, Dr. Cox's opinion is reliable. The plaintiff contends that Dr. Cox's report is based on his subjective interpretation of the use of force incident and is not based on any factual or medical foundation, thus rendering his opinion unreliable. However, as we have explained, Dr. Cox based his report and opinion on his review of Whalley's medical records and the incident reports that described the use of force incident, which included a statement from Mr. Whalley. Dr. Cox also explained that he relied on his research of the literature as applied to Mr. Whalley's case, including *Knight's Forensic Pathology*, which he explained was his basis for his examination of Mr. Whalley's bruising as shown in the medical record and as it related to Whalley's account of the incident. (Doc. 75, at 99-106). Thus, while Whalley argues that Dr. Cox's opinion is based on his subjective interpretations, the record shows that Dr. Cox relied on his 47 years of experience in the fields of forensic pathology and neuropathology, as well as his research of the literature and his review of the medical

records and incident reports in this case. Accordingly, we find that Dr. Cox's opinion meets the reliability requirement of Rule 702.

Lastly, Dr. Cox's opinion "fits" the facts at issue in this case. Here, the sole remaining claim for trial is Whalley's Eighth Amendment excessive force claim against the correctional defendants. Among other considerations, determining whether these defendants used excessive force requires consideration of "the extent of injury inflicted." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000). In the instant case, the extent of Whalley's injuries are disputed entirely. For his part, Whalley claims to have suffered a traumatic brain injury and other serious bodily injuries as a result of the defendants kicking him and dropping him on his head. On the other hand, the defendants contend that Whalley was not kicked or dropped on his head, and that he did not suffer a traumatic brain injury as the result of this incident. Dr. Cox's report contains his analysis of the extent of Whalley's injuries from the use of force incident, based upon his review of the medical records, reports of the incident, and his medical knowledge in the fields of forensic pathology and neuropathology. This report, and Dr. Cox's testimony, will help the trier of fact determine whether the extent of Whalley's injuries supports a finding that the defendants used excessive force in violation of the Eighth Amendment. Therefore, we conclude that Dr. Cox meets the three requirements under Rule 702, and he will be permitted to offer some expert testimony at trial.

However, while we will permit Dr. Cox to offer expert testimony at trial, we will not permit Dr. Cox to testify as his conclusions that Whalley was not subjected to a beating and that the incident did not occur as Whalley recounts it. As we have explained, while an expert is permitted to testify to an ultimate issue, that testimony may be inadmissible if it "would merely tell the jury which result to reach." Indeed, "[a]n expert's 'opinion on a question of law' is not admissible." Quagliarello, 802 F.Supp.2d at 623–24 (quoting Haberern v. Kaupp Vascular Surgeions Ltd. Defined Ben. Plan & Trust Agreement, 812 F.Supp. 1276, 1378 (E.D. Pa. 1992)). Here, we find that Dr. Cox's conclusions that "[inmate] Whalley was not subjected to a beating," and that "[t]his incident as represented by Mr. Whalley did not occur," would do exactly what the law forbids—tell the jury which result to reach. In our view, these conclusions by Dr. Cox reach beyond his expert testimony regarding the extent of Whalley's injuries and how he sustained them. Rather, it will be up to the trier of fact to determine what happened during the use of force incident, and whether Whalley was subjected to excessive force in violation of the Eighth Amendment.

Thus, while Dr. Cox can testify regarding what the forensic evidence shows regarding the nature and extent of Whalley's injuries and opine regarding whether that forensic evidence is consistent with the degree of violence reported by the plaintiff, he may not invade the province of the jury by categorically asserting that a beating did not occur or that Whalley's representations are false. Accordingly, while

9

we will permit Dr. Cox to offer his expert testimony at trial, in the fashion described above he will not be permitted to testify to these conclusions.

### C. The Plaintiff Can Elicit Testimony Regarding the 2016 Notation of a TBI Diagnosis, but the Defendants Can Challenge the Diagnosis and Its Connection to the Incident in this Case.

For their part, the defendants' motion *in limine* seeks to preclude the plaintiff from introducing testimony that he suffered a traumatic brain injury as a result of the August 14, 2016 use of force incident. In the same vein, the plaintiff's motion *in limine* asks us to prohibit the defendants from challenging the diagnosis of a TBI. After consideration, we will decline both of these competing invitations in favor of a middle-ground approach which is mindful that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

On this score, we recognize that there is a notation in Whalley's DOC medical records that was made by a Dr. Ladavac on October 27, 2016, which states that Whalley suffered from "mild neurocognitive impairment secondar[y] to TBI." (Doc. 80, at 13). At the Daubert hearing, the plaintiff called Dr. Stephen Wiener, the regional medical director for the DOC's Eastern region, in an effort to further develop the medical basis for this notation. Counsel for the plaintiff indicated that the purpose of Dr. Wiener's testimony was to make a differential diagnosis regarding

the 2016 TBI notation. Dr. Wiener testified that he reviewed Dr. Cox's expert report, and that there was, in fact, a notation from October 2016 diagnosing Whalley with mild neurocognitive disorder secondary to a TBI. (Doc. 75, at 16-17). However, he stated that he was unsure whether Dr. Ladavac had diagnosed Whalley herself or if she made a notation based on his medical history. (Id., at 26). Moreover, based on his review of Dr. Cox's report and Dr. Cox's summary of Whalley's medical records, Dr. Wiener testified that there was nothing in Whalley's records that would cause him to believe that Whalley suffered a TBI or exacerbated an existing TBI. (Id., at 34-35). However, Dr. Wiener did state that if a jury credited Mr. Whalley's version of the August 2016 use of force incident, what Mr. Whalley claims happened to him could have caused him to suffer a TBI. (Id., at 37, 42-43, 45).

At the outset, we note that it does not appear that Dr. Wiener has been offered by the plaintiff as an expert and was not testifying as such. Rather, the plaintiff's counsel called Dr. Wiener as a witness to attempt to establish a differential diagnosis of a TBI. Thus, we will not permit the plaintiff to introduce Dr. Wiener as an expert at trial regarding any differential diagnosis since his testimony plainly indicated that he was not in a position to make such a diagnosis. However, recognizing that Mr. Whalley's medical record does include an October 2016 notation of a neurocognitive disorder from a TBI, we will consider permitting that notation to be offered at trial subject to any objection by the defense that the TBI notation cannot be linked to this

incident in any causal fashion. Moreover, if we allow this TBI diagnosis into evidence, we will also consider permitting the defendants to argue that if Mr. Whalley was diagnosed with a TBI, that it was not casually related to the August 2016 incident. We will further reserve judgment on the admissibility of other evidence and testimony related to this issue until such issues are raised at trial.

Therefore, to the extent that the defendants wish to preclude evidence of this notation in the medical record, either in the form of documentary evidence or of testimony by the plaintiff, such a pre-trial request is denied subject to renewal at trial. In the same vein, Whalley's request to prohibit the defendants from arguing that any TBI diagnosis is not causally related to the August 2016 incident is also denied subject to renewal at trial. The parties may introduce evidence of their competing positions on this issue at trial, and any objections to the admissibility of such evidence may be raised at trial.

### III. Order

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. The defendants' motion *in limine* (Doc. 56), which seeks to preclude evidence or testimony of a diagnosis of a traumatic brain injury as a result of the August 2016 use of force incident, is DENIED.

2. The plaintiff's motion *in limine* (Doc. 53) is GRANTED IN PART and DENIED IN PART as follows: the motion is GRANTED in that Dr. Cox

will not be permitted to testify to his conclusions that Whalley was not subject to a beating and that the incident did not occur as Whalley recounts it. However, the motion is DENIED to the extent it seeks to preclude Dr. Cox's testimony and report in its entirety, and to the extent it seeks to preclude the defendants from challenging the causal connection between the incident and the TBI diagnosis.

3. The parties are directed to consult, confer, and provide the court with a supplemental case management plan proposing pre-trial and trial deadlines in this case on or before **August 24, 2021**.

Submitted this 3d day of August, 2021.

*s/ Martin C. Carlson*
Martin C. Carlson
United Stated Magistrate Judge
