IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL J. WHALLEY, SR.,** | : | Civil No. 4:18-CV-1295 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **C.O. BLAZICK, et al.,** | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

I.  **Statement and Facts of the Case**

The plaintiff, Michael Whalley, was a state inmate in the Pennsylvania Department of Corrections ("DOC"). Whalley filed this action on June 26, 2018, alleging that the defendants—correctional staff at the State Correctional Institution at Waymart—used excessive force against him in violation of his constitutional rights when he was incarcerated at SCI Waymart in 2016.

Now, in anticipation of trial, the parties have filed briefs which we are construing as motions *in limine*, seeking to either permit or exclude the entry of hearing and deposition testimony as evidence at trial. On this score, the plaintiff seeks to enter-excerpts from the <u>Daubert</u> hearing testimony of Dr. Wiener, as Dr. Wiener is no longer available to testify at trial. The plaintiff also seeks to introduce the deposition transcript of an inmate witness in lieu of his testimony at trial. (Doc.

95). For their part, the defendants have filed a brief in opposition, arguing that the transcript of Dr. Wiener's Daubert hearing testimony should not be permitted given our prior rulings limiting the scope of this testimony, and further that the inmate witness should have to appear in person and testify at trial. (Doc. 96).

We have already denied requests by the plaintiff to use the testimony of Dr. Weiner for differential diagnostic purposes. At this time we recognize that the plaintiff intends to introduce excerpts of Dr. Wiener's testimony for a much more limited purpose to authenticate a medical document—a DC-481 that lists the plaintiff as suffering a traumatic brain injury. After consideration, we will permit the plaintiff to introduce limited portions of Dr. Wiener's Daubert testimony in order to authenticate the DC-481, absent a stipulation by the parties or the defendants' designation of another DOC designee who can authenticate the document. We will also find that the DC-481 is not inadmissible heresy as it falls within recognized exceptions to the hearsay rule, but reserve ruling on the relevance of such evidence until trial. Finally, because we find that the plaintiff reasonably relied upon an apparent agreement between counsel for the plaintiff and former defense counsel, the plaintiff will be permitted to introduce the transcript of Inmate Hecker's trial testimony. However, to avoid any prejudice to the defense, defense counsel will be permitted to call Inmate Hecker as a witness at trial.

## II. Discussion

### A. The Plaintiff Will Be Permitted to Authenticate the DC-481 Through the Transcript of Dr. Wiener's Hearing Testimony.

In order to be admissible at trial, an item of evidence must first be authenticated. Federal Rule of Evidence 901 states that the proponent of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "Importantly, the proponent need not conclusively prove that a piece of evidence is authentic; '[a]ll that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be.'" Langboard v. U.S. Dep't of Treasury, 2011 WL 2623315, at *1 (E.D. Pa. July 5, 2011) (quoting McQueeney v. Wilmington Trust Co., 779 F.2d 916, 928 (3d Cir. 1985)). Once a document is authenticated, it will be admissible so long as it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 402, 403; see GN Netcom, Inc. v. Plantronics, Inc., 930 F.3d 76, 85 (3d Cir. 2019).

Here, the plaintiff intends to introduce the plaintiff's DC-481 which lists a diagnosis of a traumatic brain injury. In denying the defendants' prior motion *in limine* to preclude evidence of this medical notation and diagnosis, we held that the plaintiff would be permitted to introduce this evidence "either in the form of documentary evidence or of testimony" but further held that the defendants would

3

be able to challenge the relevance of this document at trial. (Doc. 81, at 10-12). WE further found that Dr. Weiner would not be able to medically opine on Whalley's injuries or provide an form of differential diagnosis. (Id.) Subject to our prior rulings, the manner in which the plaintiff intended to introduce this evidence for the purpose of authenticating this record—through testimony of Dr. Wiener—has been hindered by the sudden unavailability of Dr. Wiener to testify at trial due to an illness.[1] Accordingly, the plaintiff intends to introduce excerpts of the hearing testimony of Dr. Wiener in lieu of his testimony at trial. The defendants object, arguing first that Dr. Wiener is not a DOC designee, and thus should not be permitted to testify to the authenticity of the document. They further assert that permitting the testimony of Dr. Wiener relative to the DC-481 constitutes hearsay, as Dr. Wiener did not make the notation in the record.

At the outset, given the protracted procedural history regarding the plaintiff's attempts to identify a designee from DOC to authenticate this medical document, which resulted in a subpoena to Dr. Wiener who was the regional medical director for the DOC's eastern region, we will not preclude Dr. Wiener's testimony on this basis unless the defendants are willing to identify another individual from the DOC who can authenticate this document at trial. Absent the identification of a different DOC designee, or a stipulation as to the authenticity of the DC-481, we will permit

---

[1] The unavailability of Dr. Wiener to appear and testify at trial is undisputed.

4

Dr. Wiener's testimony to serve as testimony of a DOC designee on this issue of authentication.

We also conclude that Dr. Wiener's testimony is sufficient to authenticate the DC-481. Dr. Wiener testified at the Daubert hearing that the company he worked for, Wellpath, is the medical provider for the Pennsylvania Department of Corrections. (Doc. 75, at 14). He explained what a DC-481 is generally, what its purpose is, and to what extent medical professionals like himself use and rely on the DC-481 to treat patients. (Id., at 18-22). As we have explained, the plaintiff's burden to authenticate requires him to establish a "foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." McQueeney, 779 F.2d at 928. We find that this limited testimony of Dr. Wiener, a medical professional who worked as a provider of medical care for inmates in the Pennsylvania DOC, would serve as a sufficient foundation from which a jury could conclude that "the evidence is what the proponent claims it to be." Id. However, as we will describe in more detail, the plaintiff will be restricted to introducing only those limited portions of Dr. Wiener's testimony that we have identified in order to authenticate the DC-481.

We further find that permitting Dr. Wiener's hearing testimony does not violate the rule against hearsay. The defendants contend that because Dr. Wiener did

not make the notation on the DC-481, the notation of a traumatic brain injury constitutes hearsay. We disagree.

A statement constitutes hearsay when "(1) the declarant does not make [the statement] while testifying at the current trial or hearing; and (2) a party offers [the statement] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). However, Rule 803(6) makes an exception to the rule against hearsay for records of regularly conducted activity if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . .; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Moreover, Rule 803(4) makes an exception to the rule against hearsay for statements made for medical diagnosis treatment. See Fed. R. Evid. 803(4).

In this case, we find that Dr. Wiener's testimony which simply identifies a notation of a traumatic brain injury on the DC-481 does not constitute hearsay. At the outset, it is clear that this statement—the notation of a traumatic brain injury—was made for the purpose of medical diagnosis or treatment and describes Whalley's

medical history. See Fed. R. Evid. 803(4). Thus, this statement would constitute an exception to the hearsay rule, and the plaintiff can use Dr. Wiener's testimony to introduce this evidence.

In our view, this testimony also falls under Rule 803(6) as an exception to the rule against hearsay because Dr. Wiener's testimony serves as testimony of a "qualified witness" to authenticate the record that was regularly kept in the course of business by DOC. The Court of Appeals for the Third Circuit has held that such a witness "need not be an employee of the [record-keeping] entity so long as he understands the system." United States v. Pelullo, 964 F.2d 193, 201 (3d Cir. 1992) (internal quotations and citations omitted). Thus, in order to be a qualified witness, the witness must be able to attest:

> (1) [that] the declarant in the records had knowledge to make accurate statements; (2) that the declarant recorded statements contemporaneously with the actions which were the subject of the reports; (3) that the declarant made the record in the regular course of the business activity; and (4) that such records were regularly kept by the business.

United States v. Furst, 886 F.2d 558, 571 (3d Cir. 1989) (citing Rule 803(6)).

We find that Dr. Wiener's testimony meets these qualifications. Dr. Wiener testified that Dr. Ladavac, who made the notation on the DC-481, was the head of psychiatry at SCI Graterford and worked for the mental health provider that provided psychiatric services to inmates in the DOC (Doc. 75, at 22-23); that Dr. Ladavac entered the notation on the date transcribed in the DC-481 (Id., at 35-36); that Dr.

7

Ladavac would have made the notation either as a diagnosis or based on history given by the patient, documents she reviewed, or based on an examination of her own in her capacity as a psychiatrist in the DOC (Id., at 26); and that DC-481s were usually generated when an inmate was being discharged either out of the DOC or to another DOC facility. (Id., at 18). Accordingly, we conclude that the DC-481 and statements contained therein is not hearsay.

Finally, the defendants contend that the DC-481 is not relevant evidence and, therefore, the plaintiff should not be permitted to introduce it. However, we will defer ruling on the question of the relevance and overall admissibility of this evidence until trial. Indeed, it is well settled that "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." In re Paoli R.R. Yard PDB Litig., 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original); see e.g., Vanderhoff v. City of Nanticoke, 2021 WL 4975080, at *5 (M.D. Pa. Oct. 26, 2021) (deferring a ruling on a motion *in limine* to preclude evidence because "the context of trial will provide more clarity on the questions of relevancy, potential prejudice, and the purpose for which evidence is offered"); Crestwood Membranes, Inc. v. Constant Servs., Inc., 2018 WL 493257, at *3 (M.D. Pa. Jan. 19, 2018) (same). Accordingly, we will defer a ruling on the exclusion of this evidence until trial, where we can make a more fully informed

judgment on questions of relevance, potential prejudice, and the purpose for which the evidence will be offered.

In sum, the plaintiff will be permitted to introduce limited portions of Dr. Wiener's testimony at trial, which will be described in more detail in our order below, in to authenticate the DC-481 because Dr. Wiener is unavailable to testify, and this testimony does not violate the rule against hearsay. At trial, the defendants will have an opportunity to contest the relevance of this evidence and its overall admissibility.

### B. The Plaintiff Will be Permitted to Introduce the Deposition Testimony of Inmate Hecker.

Finally, the plaintiff has requested to introduce deposition testimony of an inmate witness, Christopher Hecker, in lieu of calling him as a witness at trial. At the outset the plaintiff appears to be arguing that Mr. Hecker's apparent mental impairment diagnosis renders him unavailable for trial. (Doc. 95, at 2). Further, the plaintiff contends that he understood that he and former counsel for the defendants had an agreement that Mr. Hecker's later deposition would constitute his trial testimony. While we find that the plaintiff has failed to meet his burden to show that Mr. Hecker is unavailable for trial, we further find that the plaintiff's counsel reasonably relied upon an apparent agreement use Hecker's later deposition as his trial testimony. Accordingly, we will permit the plaintiff to introduce this testimony

at trial but will allow the defense to call Hecker as a witness at trial if they wish to further explore his prior deposition testimony..

Rule 32 of the Federal Rules of Civil Procedure allow for the use of depositions in court proceedings so long as the opposing party had an opportunity to cross examine the deponent. Fed. R. Civ. P. 32. According to Rule 32, a party may use all or part of a deposition if the witness is unavailable and "cannot attend or testify because of age, illness, infirmity, or imprisonment." Fed. R. Civ. P. 32(a)(4)(C); see also Fed. R. Evid. 804(a)(4). The party requesting the use of a deposition on the basis of an individual's illness has the burden to "provide objective medical support for the assertion." Sheetz v. Wal-Mart Stores, Inc., 2018 WL 8344383, at *1 (M.D. Pa. Mar. 28, 2018) (Mehalchick, M.J.) (citing Complaint of Bankers Trust Co., 752 F.2d 874, 888 (3d Cir. 1984)). On this score, all that is required is the declaration of a medical professional. Id. (quoting Finzie v. Principi, 69 F. App'x 571, 573 (3d Cir. 2003)).

Here, we find that the plaintiff has not carried his burden to show that Mr. Hecker is unavailable because of an illness. Rather than providing objective medical support, the plaintiff vague asserts that Mr. Hecker indicated a diagnosis of "psychosis," and that the transcript of his deposition reflected "a rambling diatribe about the effects of Haldol." (Doc. 95, at 2). Without more, this assertion is

insufficient to allow for the introduction of Hecker's deposition transcript in lieu of his testimony under Rule 32.

However, after a review of the parties' submissions, we conclude that the plaintiff has reasonably relied upon an apparent agreement between the plaintiff's counsel and the defendants' former counsel for the later deposition of Hecker to be used as his trial testimony. Basic principles of contract law guide our decision on this score. In Pennsylvania, contracts or agreements are interpreted first by the plain meaning of the parties' writings, but if an ambiguity exists, a court can consider the words of the writing, an alternative meaning suggested by the parties, and the nature of any supporting evidence offered by the parties to determine the meaning. See Delaware County v. Delaware County Prison Employees Independent Union, 713 A.2d 1135, 1137 (Pa. 1998); Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980). Ambiguities can arise "through silence or indefiniteness of expression." Ney v. Open Solutions, Inc., 2007 WL 3377239, at *8 (E.D. Pa. Nov. 8, 2007) (quoting Crown, Cork & Seal Company, Inc. v. Employers Insurance of Wausau, 2002 WL 31164702, at *2 n. 1 (E.D. Pa. Sept. 27, 2002).

Here, the parties attach emails between counsel, in which the plaintiff's counsel clearly stated that he planned to take Hecker's trial testimony after the discovery deposition. (Doc. 95-4, at 1-2). In response to this proposal, former counsel for the defendants voiced not express objections but simply responded with

11

"You can set up." (Id., at 1). Accordingly, there would seem to be, at the very least, some ambiguity created by former defense counsel's response, or lack thereof, that neither explicitly confirms nor denies whether the later deposition would constitute Hecker's trial testimony. Further, this email exchange can be read as voicing tacit agreement in the course proposed by plaintiff's counsel. This interpretation of the exchange between counsel as a tacit agreement is further buttressed by the conduct of counsel at Hecker's deposition. At the later deposition, the plaintiff's counsel began the deposition with the following statement: "[T]his is a deposition of Christopher Hecker who is a potential witness at the trial of this matter. And as he is incarcerated, we are going to take his deposition for purposes of trial." (Doc. 96-9, at 4). Former counsel for the defendants lodged no objection and instead proceeded to cross examine Hecker after questioning by the plaintiff's counsel. (Id., at 5).

      Based on the foregoing, we conclude that the plaintiff could reasonably rely upon this apparent, albeit tacit, agreement to conclude that Hecker's later deposition could constitute his trial testimony. Despite the recent declaration from former defense counsel that she never subjectively intended to enter into such an agreement with the plaintiff's counsel (Doc. 96-9, at 1), we find that a reasonable and logical interpretation of this evidence is that the later deposition would constitute Hecker's trial testimony. Moreover, it is clear that the plaintiff's counsel reasonably relied on such an interpretation, as he, in fact, stated that he was taking the inmate's trial

testimony at the time the testimony was taken. Accordingly, we conclude that the plaintiff has reasonably relied upon this apparent agreement that this testimony could be used as Hecker's trial testimony in the event the case proceeded to trial, and thus, we will allow the plaintiff to introduce this transcript at trial. However, out of an abundance of caution and to avoid any potential prejudice from the introduction of this testimony, we will permit defense counsel to call Inmate Hecker as a witness at trial and cross examine him at that time.

## III. Order

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. The plaintiff will be permitted to introduce limited portions of Dr. Wiener's <u>Daubert</u> hearing testimony for the purpose of authenticating the DC-481 which lists a notation of a traumatic brain injury suffered by the plaintiff.[2] We will defer any rulings on the relevance of the DC-481 until trial.

---

[2] Subject to any specific objections the limited portions of the transcript (Doc. 95-1), that the plaintiff will be permitted to introduce are as follows: p. 14 (lines 1-25); p. 16 (lines 21-25); p. 17 (lines 1-25); p. 18 (lines 1-15, 24-25); p. 19 (lines 1-11, 15-25); p. 20 (lines 1-25); p. 21 (lines 1-4, 16-25); p. 22 (lines 1-25); p. 23 (lines 1-25); p. 24 (lines 1-9 and 25); p. 25 (lines 1-6); and p. 26 (lines 14-21). Under the rule of completeness, Rule 106 of the Federal Rules of Evidence, the defense may designate any other portions of Dr. Weiner's testimony which they believe in farness should be considered in conjunction with these excerpts provided they do so on or before **February 8, 2022**.

2. The plaintiff will be permitted to introduce the transcript of Christopher Hecker's trial testimony (Doc. 95-3) at trial. To avoid potential prejudice, the defendants will be permitted to call Inmate Hecker at trial to cross examine him on the limited testimony produced in the transcript.

So ordered this 1st day of February 2021.

<u>s/ Martin C. Carlson</u>
Martin C. Carlson
United Stated Magistrate Judge