## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL J. WHALLEY, SR.,** | : | **Civil No. 4:18-CV-1295** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **C.O. BLAZICK, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

**I.    Statement of the Facts and of the Case**

This case, which comes before us for consideration of a motion for new trial filed by the plaintiff, (Doc. 126), is a civil action brought by Michael Whalley, a former inmate at State Correctional Institution Waymart (SCI Waymart), against several former corrections officers of the institution. In this lawsuit, Whalley alleged the defendants violated his Eight Amendment right to be free from cruel and unusual punishment when they used excessive force against him during an altercation at SCI Waymart while he was incarcerated.

The facts of this case arose from an encounter between correctional staff at SCI Waymart and the plaintiff, which quickly escalated into a physical confrontation. At the time the incident took place, Whalley was an inmate

incarcerated at SCI Waymart in Wayne County Pennsylvania. On August 14, 2016, Whalley and Defendant Kranick were in the day room at the facility when the plaintiff asked Kranick if he could remove a letter from the mailbox. Kranick told Whalley he did not have the key and Whalley called him a liar. The exchange escalated, and Whalley was taken to the Designated Quiet Area ("DQA"), a closed room where inmates are taken to calm down, by Defendants Kranick, Marvin, and Blazick. This is where the events forming the basis of the dispute in this case occurred.

In advance of trial, the parties summarized their versions of events as follows[1]: Whalley claimed that the corrections officers began violently assaulting him by cursing, kicking, punching, and stomping him while he laid on a mattress in the DQA without resisting or fighting back. The defendants claim that, after placing Whalley in the DQA, Kranick returned to his post in the day area but returned when he heard Whalley screaming and encountered the plaintiff in a fighting stance, threatening him and wanting to fight. Kranick called an emergency code for backup and physically restrained the plaintiff with the help of Marvin and Blazick. The defendants argue that Whalley continued to struggle and fight the officers as they attempted to subdue him.

---

[1] The background facts are pulled from the parties' respective briefs during the summary judgment phase of this litigation. (Docs. 33, 34, 36).

Whalley's complaint proceeded to trial only as to Whalley's Eight Amendment claims against Defendants Kranick, Marvin, and Blazick upon this dispute of material facts as to the events which took place during the altercation. A jury trial was held on February 14, 2022. At trial, the parties each presented competing evidence as to the nature of the altercation between Whalley and the defendants, as well as the nature of Whalley's alleged injuries.

Whalley testified that, after being taken to the DQA, Defendant Kranick was taunting him and asking him to fight, to which Whalley replied, "you hit me first . . . I dare you." (Doc 131, 80:1-13). Then Kranick "came barreling in" to the DQA room and he, Marvin, and Blazick grabbed him and started assaulting him. (Id., 80:18-19; Doc. 132, 204:18). Whalley testified that the defendants handcuffed him, slammed him up against the wall, beat him, punched him, kicked him, and that Blazick threw a "flying knee" at him. (Doc. 131, 81:2-14). According to Whalley, the defendants then wrapped a towel around his head and flung it around, slamming it into a wall, causing him to black out. (Id., 82:19-83:3). Then, after restraining him on a gurney, Kranick kicked him in the groin at least four times, then ordered the other corrections officers to raise him up as high as they could lift him and drop him on the ground numerous times, slamming his head on the concrete and causing him to almost black out again. (Id., 84:3-25). He also testified that the defendants sprayed him with OC spray and put him in a hot shower, causing his face to become swollen,

3

and that he was having trouble breathing and was spitting up blood. (Id., 86:14-15). According to Whalley's testimony, he was then strapped in four-point restraints for almost a week and left unattended. (Id., 86:16-20).

The plaintiff also testified that he suffered an array of injuries in the incident which essentially form the basis of the motion for a new trial. He claims he suffered injuries to his head, including a traumatic brain injury, along with bruises, cuts, and abrasions. Whalley testified that, immediately following the incident, he was having trouble with his short-term memory, was in excruciating pain, could barely walk, and was urinating blood and coughing up blood. (Doc. 131, 106: 23-107:1). He also claimed to be suffering from flashbacks and having nightmares about the incident. (Id., 107:3-9). Whalley maintained that he still has problems urinating and has neck and spine pain, flashbacks and nightmares, and short-term memory problems. (Id., 123:4-19), as well as a deformity in his rib. (Doc. 132, 255:19-20). In addition to his testimony, the plaintiff presented a DC-481 Form, or medical release summary, authenticated by expert witness Dr. Stephen Wiener[2] showing that a prison psychiatrist diagnosed Whalley with "mild neurocognitive disorder due to traumatic

---

[2] Dr. Wiener was unavailable to testify at the trial, however he had previously testified under oath as to the contents of the DC-481 form. In a pre-trial memorandum and order, the Court ruled that portions of Dr. Wiener's prior testimony would be admissible at trial to authenticate the contents of the DC-481 form, subject to a limiting instruction provided by the Court. (See. Doc. 99, at 13; Doc 131, 46:21-48:3).

brain injury," on December 12th, 2016 (Doc. 131, 56:2-19). Photographs were also entered into evidence reflecting the injuries that Whalley claimed were documented by the medical team at SCI Waymart on the day of the incident. The plaintiff argues that these photographs represent at least thirteen discrete and undisputed injuries, including bruises, cuts, and abrasions.

As to the defendants' description of events, Defendant Kranick testified that, after taking Whalley to the DQA and leaving him there, he heard a loud screeching sound and responded to the DQA to find out what was going on. (Doc. 132, 351:9-16). When he returned, he found Whalley in a "fighter's stance" and Whalley said "Sarge, me and you, right now." (Id., 351:19-23). Fearing he was going to be attacked, Kranick testified that he grabbed Whalley by the shirt and took him to the floor. (Id., 353:12-17, 355:4-6). According to Kranick, Whalley was not complying with orders while he attempted to place him in metal restraints (Id., 357:6-8). Whalley continued to "wriggle and writhe" on the mattress on the floor of the DQA while Kranick attempted to get control of his wrists so he could be handcuffed. (Id., 360:10-15). Whalley was eventually placed in a Reeves Sleeve on a gurney with his arms and legs in belted restraints. (Id., 361:7-11, 361:25-362:3). Kranick testified that he never kicked or punched Whalley or slammed his head into a wall and did not witness anyone dropping Whalley while he was in the Reeves Sleeve. (Id., 366:18-367:18, 370:1-5). Kranick then said Whalley was wheeled to a "tie-down

room" and tied down to a bed in four-point restraints where he was evaluated by medical personnel. (Id., 379:2-5). Kranick testified that plaintiff did not report any injuries to him at that time. (Id., 379:6-8). Kranick's testimony regarding the events that transpired was corroborated by an incident report read by Defendant Blazick at trial,[3] (Id., 418:9-428:22), and by Defendant Marvin's testimony. (Doc. 133, 463:16-483:23).

Following three days of testimony, on February 17th, 2022, the jury found that the plaintiff had proven by a preponderance of the evidence that excessive force was used intentionally and maliciously against Whalley by Defendant John Kranick, but not by the other two defendants. (Doc. 116). The jury then found that the plaintiff had not proven by a preponderance of the evidence that Kranick's use of excessive force caused an injury to the plaintiff and awarded no damages. (Id.) The plaintiff filed the instant motion for new trial, limited to the issue of damages, on March 14th, 2022, arguing that the jury's finding that the excessive force caused no injury to the plaintiff, despite finding Kranick liable for using excessive force, was against the great weight of the evidence presented at trial, entitling him to a new trial. (Doc. 128). The motion is fully briefed and ripe for disposition. (Docs. 128, 136, 140). For

---

[3] Blazick read aloud the incident report under Rule 803.5 as a past recollection recorded. Blazick made the report when the matter was fresh in his memory, but due to a brain injury he suffered in 2017, was unable to recall well enough to testify about it. (Doc. 132, 419:23-426:20).

the reasons that follow, the plaintiff's motion for a new trial shall be denied, but the jury's verdict shall be augmented to award nominal damages of $1 to the plaintiff.

## II.  **Discussion**

### A. **Motion for New Trial – Standard of Review**

Rule 59 of the Federal Rules of Civil Procedure, which concerns the power of a court to grant a new trial or to alter or amend a judgment, provides, in pertinent part, as follows:

> (a) In General.
> > (1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
> >
> > > (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court....
> > . . .
>
> (e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

Fed. R. Civ. P. 59. Federal courts are hesitant to order new trials, and the Third Circuit has explained that "the district court's power to grant a new trial motion is limited to those circumstances where a miscarriage of justice would result if the verdict were to stand." Olefins Trading, Inc., Han Yang Chem. Corp., 9 F.3d 282, 290 (3d Cir. 1993) (internal quotation marks omitted). As one leading commentator has emphasized, a motion for a new trial must "state with particularity the grounds

7

for seeking the order," and a motion will be found "defective if it states no grounds whatever, or if the statement of grounds is purely pro forma." 11 Federal Practice & Procedure § 2811 (3d ed.) (quoting Parts and Elec. Motors, Inc. v. Sterling Elec., Inc., 826 F.2d 712 (7th Cir. 1987) (internal quotations removed). The decision of whether to grant a new trial is left to the sound discretion of the trial judge. Todd v. Luzerne County Children & Youth Servs, No. 3:04-cv-2637, 2011 WL 841429, at *2 (M.D. Pa. Mar. 8, 2011). Some instances where courts have granted motions for new trials include where: (1) there has been a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury. Maylie v. Nat'l R.R. Passenger Corp., 791 F. Supp. 477, 480 (E.D. Pa. 1992).

In considering a motion for a new trial, a court should proceed with caution and remain "mindful that it should not simply substitute its own judgment of the facts and the credibility of the witnesses for those of the jury. Rather, the court should grant a new trial 'only when the great weight of the evidence cuts against the verdict and a miscarriage of justice would result if the verdict were to stand.'" Id. (quoting Leonard v. Stemtech International, Inc., 834 F.3d 376, 386 (3d Cir. 2016); see also Springer v. Henry, 435 F.3d 268, 274 (3d Cir. 2006); Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1352-53 (3d Cir. 1991).

"[W]here the evidence is in conflict, and subject to two or more interpretations, the trial judge should be more reluctant to grant a new trial." Klein v. Hollings, 992 F.2d 1285, 1295 (3d Cir. 1993) (citation omitted). "This limit upon the district court's power to grant a new trial seeks to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 201 (3d Cir. 1996) (quoting Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992)). Accordingly, the Third Circuit has instructed that "a District Court reviewing a jury verdict has an 'obligation ... to uphold the jury's award if there exists a reasonable basis to do so." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 351-52 (3d Cir. 2001) (quoting Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir. 1989)).

## B. The Defendant's Motion for a New Trial Should Be Denied.

### 1. The Jury's Verdict Was Well-Supported by The Greater Weight of the Evidence.

The defendant has moved for a new trial, limited to the issue of damages, alleging that the jury's verdict on damages went against the great weight of the evidence presented at trial, resulting in a manifest injustice to the plaintiff. The plaintiff specifically argues that the verdict, finding that the plaintiff had proven by a preponderance of the evidence that Defendant Kranick violated Whalley's Constitutional rights by using excessive force against him, but awarding no compensatory damages, was contrary to the law on causation, the instructions given

9

by the court, and the undisputed evidence that the plaintiff "sustained" injuries as a result of Defendant Kranick's use of excessive force.

The Second Circuit Court of Appeals analyzed a similar case, where a jury found a Constitutional violation but found the plaintiff had suffered no compensable damages as a result. As to whether this verdict is inconsistent, our sister circuit noted:

> In seeking consistency, we bear in mind that a jury is entitled to believe some parts, and to disbelieve other parts, of the testimony of any given witness. See, e.g., id.; United States v. Gleason, 616 F.2d 2, 15 (2d Cir.1979), cert. denied, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980). Here, the fact that the jury credited plaintiffs' accounts of the officers' invasion of Robinson's home in January 1989 did not require it to believe plaintiffs' evidence as to either the fact or the extent of their emotional suffering. We thus see no inconsistency.

Robinson v. Cattaraugus Cty., 147 F. 3d 153, 160 (2d Cir. 1998). Similarly, here, the jury was entitled to credit Whalley's testimony regarding Kranick's use of excessive force, perhaps by moving on Whalley while he was in the DQA, but not credit his assertions regarding his injuries. On this score:

> [A] jury finding of excessive force does not automatically entitle a claimant to compensatory damages as a matter of law. See id. at 103. In certain circumstances, a jury could reasonably determine that compensatory damages are inappropriate even where excessive force was used. See, e.g., Haywood v. Koehler, 78 F.3d 101, 104 (2d Cir.1996) ("[W]e have ruled that a finding of excessive force does not, as a matter of law, entitle the victim to an award of compensatory damages."). For instance, where a victim's claims of injury lack credibility, or where the injuries lack monetary value, a jury could reasonably award nominal damages. See, e.g., Briggs v. Marshall, 93 F.3d 355, 360 (7th Cir.1996). Second, where both justified and unjustified force were used, the jury could conclude that the injuries

resulted from the justified use of force. See, e.g., Gibeau v. Nellis, 18 F.3d 107, 110 (2d Cir.1994).

Amato v. City of Saratoga Springs, N.Y., 170 F.3d 311, 314 (2d Cir. 1999). In our view, the jury was free to conclude that Kranick had used excessive force when he initiated physical contact with the plaintiff by taking Whalley down in the DQA but also find that Whalley's claims of injury lacked credibility or resulted from Whalley's own actions. The trial record amply supports this inference that the jury found that Kranick's initial use of force was unnecessary and therefore was excessive, as evidenced by a question posed by the jury during deliberations asking for the definition of "excessive" and whether "excessive" is the same as "unnecessary." (Doc. 118, at 3). Following a consultation with the parties, the Court directed the jury to the instructions, which provided the definition of excessive force based on the Third Circuit Model Instructions. (Doc. 134, 632:10-633:10; Doc. 12, at 11-13). Instructed in this fashion the jury then returned a verdict which found that Kranick, as the corrections officer who first engaged with Whalley in the DQA, engaged in force that was unnecessary under the circumstances and, in the jury's view, excessive.

However, this finding that Kranick engaged in excessive force against the plaintiff was not inconsistent with its decision to decline to award compensatory damages. The plaintiff asserts that "the uncontested evidence adduced through contemporaneous pictures taken of Plaintiff's condition by the DOC Medical

11

Department showed that Plaintiff suffered 13 discrete physical injuries." (Doc. 128, at 3).

We disagree. As discussed below, the jury was entitled to disbelieve Whalley's testimony relating to the extent and origin of these injuries since, quite frankly, much of that testimony was incredible, internally inconsistent and contradicted by the plaintiff himself. Further, the evidence of Whalley's injuries was, in fact, contested at trial. The defendants presented substantial, and credible, evidence that his injuries were not as severe as Whalley asserted and were caused by his own actions. And, as previously stated, "where the evidence is in conflict, and subject to two or more interpretations, the trial judge should be more reluctant to grant a new trial." Klein v. Hollings, 992 F.2d at 1295.

In fact, in our view, the defense's best witness contradicting Whalley's alleged injuries was Whalley himself, whose testimony regarding his injuries was often incredible, inconsistent or admittedly untrue. For example, Whalley testified that he was OC sprayed then taken to the shower room where he was forced under hot water until his face became swollen, he couldn't breathe, and he was spitting up blood. (Doc. 131, 86:10-15). He also stated that the defendant kicked and stomped him, hit him with a "flying knee" while he was handcuffed and used a towel to "sling shot" his head against a wall, (Id., 81:2-14, 81:19-83:3), and placed in him a Reeves Sleeve and dropped him numerous times from a great height on his face. (Id., 84:19-22).

12

However, on cross-examination, when confronted with statements he made during his deposition which never mentioned the use of OC spray, Whalley testified that, in fact, there was no OC spray used during his altercation with the defendants, but that it was a separate incident days later. (Doc. 132, 308:16-25, 309:1-5). The photo evidence also demonstrated no blood on Whalley's shirt, despite his testimony that he was spitting up blood – Whalley eventually testified that medical had changed his clothes – and showed relatively little evidence of any head trauma, despite Whalley's allegations that a towel was used to violently sling shot his head against a wall. Further, the medical report summary prepared by a witness, former security lieutenant Quinn, during the course of his investigation of the incident noted only superficial abrasions to Whalley's chest and back, a small bruise on top of the right foot, injuries to the torso and chest, and groin discomfort. (Doc. 133, 583:2-17).

Given this evidence which directly contradicted Whalley's injury claims, the jury reasonably found that Whalley's contradictory and inconsistent testimony, the photos presented into evidence, as well as the medical record, did not support Whalley's version of events, alleging that he was brutally beaten to the point of unconsciousness. Further, Whalley testified that he had several conditions that existed prior to the incident, including a cervical injury he sustained in a car accident in 2011, (Doc. 132, 253:7-9), a prior PTSD diagnosis, (Id., 252:2-6), and a prior rib and neck injury. (Id., 255:21-22, 256:11-16).

The parties spend much time in their briefs discussing the authenticity of the photographs purported by Whalley to be taken by DOC Medical Department, with the plaintiff alleging this is uncontested evidence showing that Whalley suffered "13 discrete physical injuries." In our view, even if it was uncontroverted that the images displayed injuries to Whalley, the greater weight of the evidence supported the jury's finding that the plaintiff failed to meet his burden of proving to the jury that these injuries were caused by Kranick's actions. Although the plaintiff now asserts that the defendants gave no alternative explanation for the physical injuries, there was, in fact, a large body of evidence that allowed a jury to find that these injuries were caused by Whalley's own actions. Not only did the defendants all testify that Whalley exhibited truculent, belligerent behavior in resisting the officers who were attempting to restrain them, there was also evidence that Whalley remained belligerent and physically confrontational for many hours while restrained. The constant watch sheet presented into evidence by the defendants demonstrates Whalley remained aggressive and confrontational to prison staff while he was in four-point restraints. The log reflected, "inmate threatening staff, I will kill you all," referenced "inmate pulling on restraints" several times and that he was "rolling side to side," and documents Whalley saying "my fists are licensed weapons," and "I

have been playing the system forever, you'll see." (Doc. 133, 547:1-549:19).[4] And the defendants specifically argued, in a way that the jury found persuasive, that the injuries in the photographs presented by the plaintiff were caused by Whalley. For example, one photograph showed a large bruise on Whalley's torso, which he argued was a result of Kranick stomping on him, but which the defendants argued, and the evidence strongly suggested, was caused by Whalley straining against the belt while he was in four-point restraints. (See Doc. 132, 276:23-277:9).

The plaintiff also avers that the wording of the verdict sheet imposed a greater burden upon the plaintiff to prove that Kranick "caused" the injury to the plaintiff rather than simply that the plaintiff "sustained" an injury during the incident. At the outset, we note that, counterintuitively, the plaintiff does not argue the verdict sheet was erroneous or objectionable. Nevertheless, we highlight that, as a courtesy to counsel and parties, the Court provides the proposed jury instructions and verdict

---

[4] The plaintiff asserts that these "post-injury" statements from the constant watch log were "fantastical" and the result of a severe beating, and thus should be examined under Rule 403 as their prejudicial effect outweighs their probative value. The plaintiff raised concerns about these statements at trial, stating they were irrelevant to the issues in the case because they were statements made by Whalley in the days following the incident and while he was medicated. (Doc. 133, 531:5-14). The Court allowed the introduction of the statements of the plaintiff as a party opponent as reported by the officer in the immediate aftermath of the incident. The Court found the statements in the immediate aftermath of the incident were relevant to questions of whether Whalley could reasonably have been perceived as presenting a threat to others at that time. Thus, the statements were properly admitted. (Doc. 133, 532:19-25).

sheet prior to the start of trial so that the parties may have the opportunity to review

in advance and object to any language they find prejudicial. Despite having weeks

to consider the verdict form no such objections were lodged. On this score, the Third

Circuit has noted:

> Rule 30 of the Federal Rules of Criminal Procedure provides, in relevant part, that
>
>> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.
>
> Fed.R.Crim.P. 30. "The purpose of this provision is to provide the district court an opportunity to correct potential problems in jury instructions before the jury begins its deliberations." United States v. Russell, 134 F.3d 171, 178 (3d Cir.1998). See also United States v. Logan, 717 F.2d 84, 91 n. 13 (3d Cir.1983) ("Rule 30 has the manifest purpose of avoiding whenever possible the necessity of a time-consuming new trial by providing the trial judge with an opportunity to correct any mistakes in the charge before the jury begins to deliberate.")

United States v. Jake, 281 F.3d 123, 130 (3d Cir. 2002). The plaintiff failed to object

to the language of the verdict sheet at trial and, consequently, he has waived this

challenge to the language in his request for a new trial. Further, the jury instruction

and verdict sheet reflect the language of the Third Circuit's model instructions on

compensatory damages in §1983 cases, the use of which simply cannot be

considered error, let alone plain error. See U.S. v. Peterson, 622 F.3d 196, 208 (3d

Cir. 2010) ("We have a hard time concluding that the use of our own model jury

instruction can constitute error"); <u>Berrios v. Gentile</u>, No. 12-CV-7245, 2016 WL 758032, at *4 (E.D. Pa. Feb. 25, 2016); <u>United States v. Nwokedi</u>, No. CR 15-177 (ES), 2016 WL 7015626, at *11 (D.NJ. Dec. 1, 2016) ("The Court is simply disinclined to question the propriety of the Third Circuit's model instruction"). Moreover, as to the merits of the plaintiff's metaphysical argument regarding whether the instruction that the use of excessive force "caused" plaintiff's injuries imposes a greater burden than the plaintiff "sustaining" injuries as a result of such force, we decline to engage in an inquiry as to what occurred in the minds of the jurors when they interpreted this instruction that the plaintiff did not object to, having found that there was ample evidence to support their ultimate decision.

Finally, the plaintiff argues that the defendants engaged in improper conduct in their closing argument by focusing on alleged differences in the DOC photos and those presented by the plaintiff. He argues this conduct was so prejudicial that it warrants a new trial. At the outset, we again note that the plaintiff did not object to the defendants' closing argument at trial. (Doc. 134, 610:14-611:9). On this score:

> Generally, a party is not entitled to receive a new trial for objections to evidence that he did not make at or prior to the initial trial, even if they may have been successful. <u>Wilson v. Vermont Castings, Inc</u>., 170 F.3d 391, 395 (3d Cir.1999) ( "[Plaintiff] has failed to preserve this claim for appeal because [Plaintiff's] counsel did not object to Vermont Castings's cross-examination of Wilson or its closing argument."); <u>Waldorf v. Shuta</u>, 142 F.3d 601, 629 (3d Cir.1998) ( "[I]t is clear that a party who fails to object to errors at trial waives the right to complain about them following trial."); <u>Caisson Corp. v. Ingersoll-Rand Co</u>., 622 F.2d 672, 681 (3d Cir.1980) ("[A] party may not seek a

new trial on the basis of objections to evidence not brought to the court's attention at the original trial." (Citing <u>Belmont Industries Inc. v. Bethlehem Steel Corp</u>., 512 F.2d 434 (3d Cir.1975)). The Third Circuit has recognized an exception to waiver only in cases where the alleged error is "fundamental and highly prejudicial error resulting in a miscarriage of justice." <u>Wilson</u>, 170 F.3d at 395-96 (internal citations omitted).

<u>Ashford v. Bartz</u>, No. 1:04-CV-00642, 2010 WL 272009, at *4 (M.D. Pa. Jan. 20, 2010). Thus, having waived his objection to the defendants' closing argument, the plaintiff must show that admission of the statement was an error so fundamental and highly prejudicial as to result in a miscarriage of justice. We find no such error here.

The Third Circuit has held that, "[i]n civil trials, "'improper comments during closing arguments rarely rise to the level of reversible error [,]' " <u>Meals v. Port Auth. Trans Hudson Corp.</u>, 622 F. App'x 121, 127 (3d Cir. 2015) (quoting Dunn v. HOVIC, 1 F.3d 1371, 1377 (3d Cir. 1993) (en banc)), and a new trial should only be granted where, "the improper conduct "make[s] it 'reasonably probable' that the verdict was influenced by the resulting prejudice." <u>Id.</u> at 126 (quoting <u>Forrest v. Beloit Corp.</u>, 424 F.3d 344, 351-52 (3d Cir. 2005). Here, the defendants' statements about the photographs were not so prejudicial as to influence the jury's verdict. Nor were these remarks improper. Instead, they constituted proper commentary on the evidence. The extent of the injuries suffered by the plaintiff was a major issue at trial, thus, each party attempted to convey this evidence in a light that would disfavor his opponent. Nonetheless, the photographs, used throughout the trial as evidence

by both parties and available to the jurors for review, speak for themselves. Further, the plaintiff was not prejudiced by the defendants' statements about the photographs after having ample opportunity throughout the course of trial to present his argument as to the authenticity of the photographs, the timeframe in which they were taken, and what they depicted. Mindful that we are not to substitute our own credibility determination for that of the jury, Maylie v. Nat'l R.R. Passenger Corp., 791 F. Supp.at 480, we find that the defendants' closing argument was not so highly prejudicial as to require a new trial.

Having found that the jury's verdict was fully supported by the great weight of the evidence in this case, and the defendants did not engage in improper conduct that had a prejudicial effect on the jury, the plaintiff is not entitled to a new trial on the issue of damages.

## 2. Nominal Damages of $1 Should Be Awarded.

Having found that the jury's finding of liability but no compensatory injury was reasonable, we nonetheless conclude that a $1 nominal verdict should be awarded. In actions brought under 42 U.S.C. § 1983, where a jury finds a plaintiff has shown his substantive constitutional right was violated, but the plaintiff has failed to show any actual compensable injury, the plaintiff is entitled to an award of nominal damages. See Carey v. Piphus, 435 U.S. 247, 267 (1978). Here, the jury's finding that Whalley suffered no compensable injury was supported by ample

evidence. In this setting the jury had been properly instructed that it should return a nominal $1.00 verdict. However, perhaps due to some perceived slight ambiguity on the verdict form, despite its explicit and well-supported conclusion that Whalley failed to carry his burden of proof in demonstrating any compensable injury,  the verdict form did not note the $1 nominal award that is called for in cases where liability, but no compensable injury, is found.

 In such instances, it is entirely fitting and proper for the court to mold a nominal $1.00 verdict in accordance with the jury's specific, explicit and well-supported factual findings. Indeed, in a factually similar scenario the Second Circuit has addressed this issue and explained:

> Although the Seventh Amendment generally prohibits a court from augmenting a jury's award of damages, see U.S. Const. amend. VII ("no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law"); Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935), that proscription is not violated by the court's entering judgment awarding nominal damages when the jury has failed or refused to do so and the claimant is entitled to such damages as a matter of law. See, e.g., Gibeau v. Nellis, 18 F.3d at 111 ("[b]ecause nominal damages are mandatory under these circumstances, our [remand for entry of judgment awarding such damages without a new trial] does not impermissibly invade the province of the jury"). In the present case, the court eventually entered judgment ordering Edenhofer and Nichols each to pay Robinson $1.00 as nominal damages. Thus, the . . . error . . . as to the requirement for an award of at least nominal damages was cured.

Robinson v. Cattaraugus Cty., 147 F. 3d 153, 162 (2d Cir. 1998). Here, although the jury was instructed that, if they found Whalley's rights had been violated but he suffered no actual injury, nominal damages of $1 should be awarded, the jury did not award any damages. Nonetheless, the jury's well-supported finding of liability on the part of Kranick, but no compensable injury, entitles the plaintiff to nominal damages as a matter of law. Thus, we follow the Second Circuit's guidance that, where a jury has failed to award nominal damages despite the plaintiff being entitled to them as a matter of law, a court may properly augment the verdict by awarding $1 in nominal damages.

## III.   **Conclusion**

Accordingly, for the foregoing reasons, the defendant's motion for a new trial limited to damages will be DENIED to the extent that it requests a new trial on the issue of damages, but the jury's verdict will be augmented to include an award of $1 in nominal damages in accordance with the explicit and well-supported factual findings made by the jury.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

September 15, 2022

21